In the Matter of the Application of CLEMENT G. LANNI, Petitioner, against PATRICK GRIMES and ROBERT SMITH, Constituting the Board of Elections of the County of Monroe, Respondents, for an Order Striking the Name of KENNETH B. KEATING as Alternate Delegate to the Republican National Convention from the Official Republican Primary Ballot.

Supreme Court, Monroe County, March 14, 1940.

*Arnold H. Becker*, for the petitioner.

*Harry Rosenberg, Monroe County Legal Adviser*, for the respondents.

*Kenneth B. Keating, per se.*

LAPHAM, J.  On the 27th day of February, 1940, two Republican designating petitions, setting forth the names of delegates and alternates from the Thirty-eighth Congressional district to the Republican National Convention, were filed in the office of the board of elections of Monroe county.  Both were stamped at ten-fifty-four P. M. on that day.  One of the petitions bore the names of Thomas Broderick and Arthur Lochte as delegates and Esther Barnes and Kenneth B. Keating as alternates; the other contained the names of Earl V. Sleight and Clement G. Lanni as delegates and Nelson Wagner and Kenneth B. Keating as alternates.  For the purpose of convenience these petitions will be referred to hereafter as the Broderick petition and the Lanni petition, respectively.

It is conceded that both of these petitions were regular in form, signed by a sufficient number of duly enrolled Republicans, and in every respect complied with the provisions of the Election Law of this State.  It is also conceded that no " written objections "

to the Broderick petition were filed with the Election Board as authorized by section 142 of the Election Law.

At eleven-six A. M. on the 1st day of March, 1940, the designee Kenneth B. Keating filed with the board of elections an instrument which read as follows:

" DECLINATION OF DESIGNATION

" *To the Commissioner of Elections of Monroe County:*

" Sir: Please take notice that I decline the designation for office of Alternate delegate Republican National Convention (Rep.) tendered to me by the petition of the enrolled voters of the 38th Congressional District (Rep.) party filed in your office, Feb. 27, 1940 at 10:54 P. M. which petition Earl V. Sleight and Clement G. Lanni are designated as delegates to Rep. Nat. Conv., 38th Congressional District.

" Dated, *March* 1, 1940.

" Yours,

" (Signed) KENNETH B. KEATING

" Residence 3500 Elmwood Drive, Brighton, N. Y.

" Place of Business 5 So. Fitzhugh St., Rochester, N. Y.

" (Acknowledgment.) "

It is the claim of Mr. Lanni, the movant, that he entered oral objection before the commissioners to the placing of the name of Mr. Keating upon the Republican primary ballot; that the instrument filed by the latter constituted a declination of designation under the provisions of section 138 of the Election Law and, both being official Republican designating petitions and only one political party being involved, that the declination so filed constituted a refusal to be a designee of the Republican party, thereby eliminating his name from the primary ballot. In support of this contention, the petitioner cites subdivision 6 of section 108 of the Election Law wherein it is provided, among other things, that: " If a candidate for a party position to be filled by two or more persons be designated in more than one petition his name shall be printed in the group of candidates designated by the petition first filed, unless, before the fourth Tuesday preceding the primary election, he shall, by writing signed and duly acknowledged by him and filed with the board of elections, specify another group in which his name shall be printed."

The petitioner lays great stress upon the further claim that, while the stamp of the recording clock indicates that the filings were simultaneous, in truth and in fact the Lanni petition was stamped prior to the other, although within the same minute; that the Lanni petition having been first filed, it was incumbent upon Mr. Keating

to specify affirmatively by writing duly signed and acknowledged his preference to have his name appear in the Broderick group.

The respondents, upon the other hand, assert that the petitioner is neither a " candidate aggrieved " nor " the chairman of any committee," and that he did not file written objections pursuant to section 142 of the Election Law, and, therefore, does not meet any one of the jurisdictional prerequisites confronting one desiring to institute such a proceeding. It is the further claim of the respondents that the law does not recognize fractions of a minute and that this court must dispose of this motion upon the theory that the filings were simultaneous, rather than consecutive, as a result of which there is no " petition first filed " within the meaning of subdivision 6 of section 108 of the Election Law, thus eliminating the necessity for Mr. Keating to file with the board of elections a certificate specifying the group of his choice.

Two important questions confront us here: Has the petitioner compiled with the jurisdictional prerequisites essential to setting in motion the proceeding under the statute and, if so, did Mr. Keating, by filing the aforedescribed instrument, specify the group in which he desired his name to be printed in accordance with the provisions of subdivision 6 of section 108 of the Election Law? Having failed to file objections under section 142 of this act, and not being the chairman of any committee, Mr. Lanni must, in order to institute such a proceeding as this, bring himself under the classification of a " candidate aggrieved." (Election Law, § 330.) Who is a " candidate aggrieved " within the meaning of this act? Mr. Justice Cuff, in passing upon this phrase, says: " It might be asked: What is meant by a candidate aggrieved as referred to in section 330 of the Election Law. There may be many instances, but the example that readily comes to mind is where an independent nomination is made of a person bearing the exact name of a candidate already nominated by another party, and it is clearly established that that was done with no hope of electing such independent nominee, but solely for the purpose of splitting the vote of the other. In a case of that kind no one would deny that the rival candidate was aggrieved and should obtain relief under section 330. Petitioners are not aggrieved candidates within the meaning of that section. All applications of this character must be made in good faith. Can it be said that petitioners' motives were good when their only aim is to remove the opposition to their own elections? They would deprive the electorate of their districts of the opportunity to vote for alderman and assemblyman on the Recovery party ticket. Petitioners are not interested in the welfare of the Recovery party, nor are they seeking to purify the nominations made

by that party for the benefit of that party. As contestants against the Recovery party they should not be permitted to inject themselves into the internal affairs of that party." (*Matter of Iserman v. Cohen*, 149 Misc. 322, 323; affd., 240 App. Div. 864. See, also, *Matter of Harvie*, 122 Misc. 669.)

Although the petitioner is a candidate for the party position of a delegate to the Republican National Convention, I do not believe, in the light of the foregoing authorities, that he is a "candidate aggrieved." Mr. Keating, whose name the petitioner seeks to strike from the Republican primary ballot, is not a rival for the identical position which Mr. Lanni seeks, but is designated merely as an alternate and, in my opinion, there is no conflict or competition between a delegate and an alternate which can furnish the foundation for a grievance entitling the petitioner to lay claim to this status. If Mr. Keating's name were to appear upon the ballot, surely the petitioner could not logically contend that this would be prejudicial to him when he was content in the first instance to allow their names to appear in the same group for submission to the Republican electorate. If the names of both had remained on the Lanni petition, no claim of rivalry could have been urged. Under these circumstances it would seem that it comes with little grace for the petitioner now to say, in the light of the original designations on the Lanni petition, that the presence of Mr. Keating's name on the Republican primary ballot would constitute a grievance within the meaning of the statute.

Section 330 of the Election Law clothes this court with plenary power in this proceeding to "determine any question * * * arising * * * [and] make such order as justice may require." (*Matter of Holley* [*Rittenberg*], 268 N. Y. 484. See, also, *Matter of Cowles*, 252 App. Div. 326; *Matter of Sredzinski v. Schmieding*, 245 id. 398.)

The statute expressly vests the court with jurisdiction to construe liberally the provisions of this section in their application to the instant facts. In adopting the rule that equity "always looks through the form and gives effect to a transaction so as to carry out the substantial intent of the parties" (*Lipe v. Beech-Nut Packing Co., Inc.*, 243 App. Div. 433, 436), it seems to me that the instrument characterized as a "Declination of Designation" reveals an intent both in spirit and reality to specify the preference contemplated by subdivision 6 of section 108 of the Election Law and constitutes a compliance therewith. In the above case this rule was enunciated in the interpretation of an instrument in which the plaintiff in words agreed to sell to the defendant certain stock with the agreement on the latter's part to resell it to the plaintiff at the

same price within a specified time. It was represented to the plaintiff before signing the instrument that he was obtaining a loan but that the " form " of the transaction was to be in the manner of the instrument as executed. The court sought for the true intent of the parties and construed the instrument in accordance therewith as a mortgage. The case law of this State contains many instances of the application of this doctrine to varied sets of facts. An absolute bill of sale as security for debt has been construed to be a mortgage. (*Smith* v. *Beattie*, 31 N. Y. 542.). A bill of sale absolute on its face but intended to operate as a mortgage of goods and chattels therein mentioned when filed pursuant to the provisions of the Lien Law was held to be notice to a subsequent purchaser in good faith, although there was nothing in the instrument itself expressing an intention that the same was to operate as a mortgage. (*Sheldon* v. *McFee*, 216 N. Y. 618.)

Applying this doctrine to the instrument in question, it seems clear to this court that Mr. Keating intended by filing the document characterized upon its face as a " Declination of Designation " to " specify another group in which his name shall be printed." (Election Law, § 108, subd. 6.) We have before us the picture of petitions representing but *two* groups, upon both of which the name of Kenneth B. Keating appeared for the position of alternate delegate. Upon discovering that his name appeared on the Lanni petition, Mr. Keating took steps to remove it therefrom, and, in order to insure against misunderstanding or mistake, added in writing the names of the Lanni group, from which he desired to withdraw, to the partially filled out form presented him at the office of the board, and remained silent as to the Broderick petition. This silence was, under the circumstances, tantamount to the specification by Mr. Keating of the Broderick group.

The foregoing conclusions render the question of the time of filing of the declaration of preference more or less academic. However, the earnestness with which the parties to this proceeding urge their respective contentions warrants a consideration of these claims. Does the time-stamp of the recording clock control? The petitioner urges that it is the duty of the court to go behind this record and determine from the physical facts which petition was filed first. The respondents, upon the other hand, argue that this court is precluded from adopting such a course; that for the purpose of this motion the filings should be treated as simultaneous and that, under the General Construction Law, parts or fractions of a day should not be considered. This may be said to be a legal fiction and does not obtain in this proceeding. While it is true that **section 19 of the General Construction Law defines a calendar day**

as including the time from midnight to midnight, nevertheless, " Courts will take notice of the fractions of a day ' when there are conflicting rights, for the determination of which it is necessary for them to do so.' " (*Wallace* v. *Syracuse, B. & N. Y. R. R. Co.*, 27 App. Div. 457.) This doctrine has been expressed in varying phraseology through the years. As early as 1850 the Court of Appeals said: " As a general rule the court does not inquire into the fractions of a day, except for the purpose of guarding against injustice." (*Blydenburgh* v. *Gotheal*, 4 N. Y. 418.) Perhaps the most generally accepted statement of the rule is found in the opinion of Judge MILLER, written in 1878: " The law does not regard fractions of a day, except in cases where the hour itself is material, as is the case where priority of judgments is in question." (*Marvin* v. *Marvin,* 75 N. Y. 240.) Judge BISCHOFF, in applying this rule, says: " By the express provisions of the Constitution of this State (Art. IV, § 9), acts of the Legislature approved by the Governor become effective as laws only upon such approval (Suth. Stat. Const. § 104); and whenever in the ascertainment of the rights and obligations of parties such becomes material, courts may inquire into the precise time when the several laws took effect. (*Town of Louisville* v. *Portsmouth Savings Bank*, 104 U. S. 469.) In the case last cited Mr. Justice HARLAN observed that ' courts may, when substantial justice requires it, ascertain the precise hour when a statute took effect by the approval of the executive. * * * We look to the final act of approval by the executive to find when the statute took effect and, when necessary, inquire as to the hour of the day when that approval was in fact given.' The legal fiction that the law does not recognize the fractions of a day does not obtain in such a case. (Suth. Stat. Const. § 110.) This is in accord with the views expressed by Judge STORY in the following terse language: ' I am aware that it is often laid down that in law there is no fraction of a day. But this doctrine is true only *sub modo*, and in a limited sense, where it will promote the right and justice of the case. It is a mere legal fiction, and, therefore, like all other fictions, is never allowed to operate against the right and justice of the case. On the contrary, the very truth and facts, in point of time, may always be averred and proved in furtherance of the right and justice of the case, and there may be even a *priority in an instant of time*, or in other words, it may have a beginning and an end.' " (Italics supplied.) (*Ottman & Co.* v. *Hoffman*, 7 Misc. 714, 715. See, also, *Carter* v. *Brockway Motor Co., Inc.*, 248 App. Div. 734, 735; *Grossman* v. *Silverman*, 71 Misc. 143.)

In the light of the foregoing authorities, I hold that upon the record before me the filings were consecutive, the Lanni document

being the " petition first filed." The fact that the Lanni group won the race of diligence in the filing of their petition does not entitle them to the relief which the petitioner seeks on this motion, in view of the considerations which I have already discussed.

Application denied, with costs.

Let order enter accordingly.